## NOYES et al. v. BARNARD. [1]

### (Circuit Court of Appeals, Ninth Circuit. May 28, 1894.)

### No. 109.

JOINT VENTURE IN PURCHASE AND SALE OF LANDS — ACTION FOR PROFITS ON REFUSAL TO SELL.

Plaintiff and another entered into an agreement with defendants in June, 1882, to purchase certain timber lands for defendants, the former to receive for their services a certain percentage of the profits arising out of the sale of the lands or timber, after deducting taxes and interest on the investment, defendants to determine the time and terms of the sale. Lands were purchased thereunder between June, 1882, and February, 1883. In August, 1883, defendants refused an offer made by a responsible person to purchase the lands at a price which would have yielded about 300 per cent. profit. *Held*, by a divided court, that plaintiff could maintain an action at law to recover his share of the profits based upon such offer.

## Error to the Circuit Court for the Northern District of California.

This was an action by J. E. Barnard against Henry T. Noyes and John S. Noyes. The complaint, sworn to and filed May 22, 1891, alleged that on June 5, 1882, defendants and Delevan F. Clark and M. P. Filmore entered into an agreement with plaintiff and one Charles G. Noyes whereby the latter agreed to purchase for the former certain redwood timber lands, and to receive therefor 15 per cent. of the net profits to be derived from the sale of such lands or from stumpage, after adding to the sum of money expended in the purchase thereof the annual taxes and 7 per cent. interest per annum; "stumpage" to mean the value of the timber scaled on the land if cut by defendants, or the amount received from the sales, defendants "to determine the times and terms of sales of either, the market value of stumpage there obtaining." That plaintiff and said Noyes, immediately after the execution of said contract, purchased at divers times from June 5, 1882, to February 17, 1883, 5,198.44 acres of redwood timber lands for defendants and their associates, the total cost of which, under the terms of the contract, amounted on August 6, 1883, to $32,550.64. That, on such day, defendants and their associates were offered by a responsible person, willing and able to purchase said lands, the sum of $25 per acre for all of said lands, and that such person, if such offer had been accepted, would have paid defendants therefor the sum of $129,963.25, but that defendants declined such offer. That the net profits of the purchase of such lands amounted on August 6, 1883, to $97,416.61, and that plaintiff, in September, 1883, demanded of defendants his commissions of 7½ per cent. upon such net profits, which

they refused to pay. That Delevan F. Clark and Millard P. Filmore, defendants' associates, owned three-eighths of all of said lands, and subsequently to August 6, 1883, sold all their interest to defendant John S. Noyes; and that John S. Noyes sold one-quarter interest to R. A. Alger, and defendants paid plaintiff his commissions on said sale of one-quarter interest. That defendants have not paid plaintiff his commissions of 7½ per cent. upon the remaining three-fourths of the net profits of said purchase, amounting to $73,-059.46. That defendants were at the date of the contract, and ever since have been, and now are, nonresidents of the state of California, and are residents of the state of New York. That defendants have been continuously absent from the state, etc. That Charles G. Noyes departed this life in San Francisco, April 1, 1890. Wherefore plaintiff demanded judgment for $5,479.46, with interest from August 6, 1893. An attachment was issued against such timber lands and levied upon defendants' interest therein. The summons was served by publication. Defendants appeared, and had the cause removed to the circuit court for the northern district of California. Defendants demurred to the complaint, on the ground "that the said complaint and the matters therein contained, in manner and form as the same are therein stated and set forth, are not sufficient in law for the said plaintiff to have or maintain his aforesaid action therefor against said defendants, and that said defendants are not bound by law to answer the same, for that said complaint does not upon its face state facts sufficient to constitute a cause of action. And, for a second and further ground of demurrer, said defendants aver that the supposed promises and undertakings mentioned in said complaint (if any were so made) were, and each of them, made, as appears upon the face of the said complaint, jointly with one Charles G. Noyes, and not by plaintiff alone. And, for a third and further ground of demurrer, said defendants aver that the said supposed promises and undertakings mentioned in said complaint (if any were so made) were, and each of them, made, as appears upon the face of said complaint, by Delevan F. Clark and one M. P. Filmore, together with defendants, and such supposed contracts or undertakings were not made by defendants alone. And defendants further say that, by reason of the facts averred as aforesaid, the defendants pray judgment (1) that the said plaintiff may be barred from having or maintaining his aforesaid action thereof against said defendants; (2) that, by reason of the fact that the said Charles G. Noyes is not joined in said action as plaintiff. the defendants pray judgment that the said complaint herein may be dismissed; (3) that by reason of the fact that the said Delevan F. Clark and M. P. Filmore are not made parties defendant in this action, together with said defendants, they pray judgment that the said complaint herein may be dismissed, with costs." The demurrer was overruled, and an answer filed. The trial resulted in a verdict for plaintiff for $8,000. Defendants sued out a writ of error, specifying, inter alia, as error, the action of the court in overruling the first ground contained in the demurrer, in that the complaint does not state facts sufficient to constitute a cause of action.

Frank M. Stone, for plaintiffs in error.

Horace L. Smith and S. M. Buck, for defendant in error.

Before GILBERT, Circuit Judge, and KNOWLES, District Judge.

KNOWLES, District Judge. The defendant in error in this case, with one Charles G. Noyes, entered into a contract with the plaintiffs in error and Delevan F. Clark and M. P. Filmore to act for them in purchasing certain redwood timber land on the Van Duzen river, in Humboldt county, state of California. The defendant in error and said Charles G. Noyes were to receive for their services 15 per cent. of the net profits to be derived from the sale of the said lands, or from stumpage, after adding to the sum of money expended in the purchase thereof the annual state, county, or other government taxes, 7 per cent. interest per annum on the purchase

price. The agreement entered into was made in the form of a letter, and the acceptance of the terms was made by the following indorsement thereon:

"We agree to the terms expressed in the within instrument and agreement, with the understanding that 'stumpage' means the value of the timber scaled on the land, if cut by us, or the amount received from sales, and that we are to determine the times and terms of sales of either, the market value of stumpage there obtaining."

Before this action was brought, Charles G. Noyes died. The defendant in error brought this action, in his own name, in the superior court in and for the county of Humboldt, state of California. The petition for removal shows that defendant in error is a citizen of the state of California, and that plaintiffs in error are citizens of the state of New York. When this suit was commenced, an attachment was issued against the property of plaintiffs in error, and levied upon their interest in the said real estate purchased on said Van Duzen river. The summons was served by publication. The plaintiffs in error voluntarily appeared in the cause, and had the same removed to the circuit court of the United States for the northern district of California, on account of the diverse citizenship of the parties to the action.

In the circuit court the plaintiffs in error interposed their demurrer to the complaint, alleging that the same was defective in not stating facts sufficient to constitute a cause of action; that it was defective in not uniting Charles G. Noyes, as a plaintiff, with defendant in error, and also in not uniting the above-named contracting parties, Clark and Filmore, as defendants. The point seems to be made in the brief of plaintiffs in error that the complaint is defective because it appears therefrom that the defendant in error brought his action to recover, in his own right, for one-half of the 15 per cent. of compensation to be allowed him and Charles G. Noyes, when the contract is a joint one, and must be sued on as such. We do not doubt but that the contract must be treated as a joint contract, and cannot be sued on as a several contract. There is nothing in the complaint which would warrant the court in holding that it was otherwise than a joint contract. The presumption of law is that when two persons enter into a contract to perform certain work together, in consideration of a certain sum of money to be paid to them jointly therefor, it is a joint contract. Pom. Rem. & Rem. Rights, § 185. If there are any facts that would show that a contract which is presumptively a joint contract is one in severalty, they should be pleaded; and if a contract which was a joint contract at its inception has been, by any additional or subsequent agreement, changed into one in severalty, the facts showing such change should be pleaded, and the contract should be declared on in its changed form. No such subsequent agreement appears in the pleadings, and the original contract is the basis of the cause of action presented by the complaint. We must therefore consider that the contract sued on is a joint one. Charles G. Noyes, the co-contractor of defendant in error, died before this action was brought. The defendant in error was a

survivor therein, and as such brought this action. It was not necessary to have stated in the complaint that he brought it as a survivor. That would have been the statement of a conclusion of law. The allegation of the death of Charles G. Noyes showed this. There is an allegation in the complaint that defendant in error has not been paid his commissions of $7\frac{1}{2}$ per cent. upon the remaining net profits of said purchase. Why defendant in error did not claim in his complaint the 15 per cent. on the net profits, to which he, as a survivor, was entitled, it is difficult to determine. Perhaps he had the purpose of claiming only the amount which on a division of the percentage on said net profits would be due him. We must, however, construe the complaint from its allegations, and from what are the known rights of defendant in error as the survivor in the contract. It was his right to maintain the action as though the contract had been made to him personally. Id. §§ 188–224. In the case of Holbrook v. Lackey, 13 Metc. (Mass.) 132, it is definitely held that a survivor held a joint claim, when a survivor therein, the same as an individual claim. In suing upon a joint contract, under such circumstances, he could join therewith one which was a separate contract made with him individually. This rule has not been changed in California by statute, although it has been so changed in some states. The fact, then, that defendant in error claimed in his complaint only one-half that was due him, does not make the complaint defective.

The point that Charles G. Noyes should have been joined as party plaintiff was obviated by an amendment to the complaint, made by agreement, stating his death.

The next point for consideration is the alleged error in failing to join in the complaint, as defendants, with the plaintiffs in error, their contracting associates, Clark and Filmore. It is held, I believe, that at common law this would have been a fatal defect in the complaint. Has this requirement been changed by the statute law of California? It should be borne in mind, in approaching a discussion of this question, that plaintiffs in error were nonresidents of the state of California; that suit was commenced, and an attachment upon the property of plaintiffs in error levied; and that service of summons was made upon them by publication. They appeared in court without having been personally served with process. It also appears from the complaint that Clark and Filmore had sold their interest in said landed property. It does not appear that they had any property in the state of California upon which an attachment could be levied. They resided in New York. It would have been an entirely vain thing to have made them parties to the suit, for any proceedings in the case against them would have been a nullity. Pennoyer v. Neff, 95 U. S. 714. In this case the supreme court holds that an action commenced as this was must be considered as an action in rem. In the opinion, Justice Field says:

"It is true that, in a strict sense, a proceeding in rem is one taken directly against property, and has for its object the disposition of the property without reference to the title of individual claimants; but, in a larger and

more general sense, the terms are applied to actions between parties where the direct object is to reach and dispose of property owned by them, or of some interest therein. Such are cases commenced by attachment against the property of debtors, or instituted to partition real estate, foreclose a mortgage, or enforce a lien. So far as they affect property in the state they are substantially proceedings in rem, in the broader sense which we have mentioned."

As the object of this suit was to reach the property of some of the parties to the contract, I think all that should be required should be to name as defendants the owners of said property. To require any other parties would appear to be a useless formula. The parties named as defendants were brought into court merely for the purpose of divesting their title in the land. The judgment against them could have no other bearing.

There are strong grounds, also, for believing that the legislature of California has changed by statute the rule that would require parties to a joint contract to be made parties to the action. Where no service can be had as to any parties, practically, the action is dismissed as to them. Section 414 of the Code of Civil Procedure of California provides:

"When the action is against two or more defendants jointly or severally liable on a contract, and the summons is served on one or more, but not on all of them, the plaintiff may proceed against the defendants served in the same manner as if they were the only defendants."

It can hardly be supposed that the legislature intended that any persons should be made parties to such an action, when it was known that they could not be served with process, for the mere purpose of going through a vain proceeding. In the case of Tay v. Hawley, 39 Cal. 93, it is held that a judgment against a party served affects only his property, and not joint property. It is, in effect, then, a several proceeding and a several judgment. That a several judgment may be entered against a party served with summons is recognized in the following cases: Tay v. Hawley, supra; People v. Frisbie, 18 Cal. 402; Lewis v. Clarkin, Id. 399. In the case of Lewis v. Adams, 70 Cal. 403, 11 Pac. 833, an action was commenced upon a judgment obtained in Texas against Adams, Collins, Dalrymple, and Kennedy. Adams alone was made a party to the cause when the complaint was first filed. Subsequently, the complaint was amended, and the other parties made defendants, but no service had upon them. Adams claimed that this was a new action, and that the statute of limitations had run against the same. The court held, however, that it was not; that the bringing in by amendment of the other parties "was merely a more complete statement of the cause of action," as far as Adams was concerned. The court also held that, if there had been no objection to the complaint for the want of the other parties, the court could have rendered, as it finally did, judgment against Adams alone, and the Texas judgment could have been introduced in evidence over the objection of Adams. Certainly, this was not the rule at common law. It would appear that this case goes far to establish the doctrine that, when it would be useless to make certain parties de-

fendant in an action, because they could not be served, plaintiff need not join them..

I think, therefore, the case was properly brought in the state court. But, if I should be mistaken in this view, I think there are other considerations which would prevent them from urging the point in the federal court. The plaintiffs in error appeared in the state court, not for the purpose of submitting to its jurisdiction, but for the purpose of removing the cause to the circuit court. When a case is brought into a federal court from a state court, as to all subsequent proceedings, it must be treated as though originally brought there. Suydam v. Ewing, 2 Blatchf. 359, Fed. Cas. No. 13,-655. Section 737 of the Revised Statutes is as follows:

"When there are several defendants in any suit at law, or in equity, and one or more of them are neither inhabitants of nor found within the district in which the suit is brought, and do not voluntarily appear, the court may entertain jurisdiction and proceed to the trial and adjudication of the suit between the parties who are properly before it; but the judgment or decree rendered therein shall not conclude or prejudice other parties not regularly served with process, nor voluntarily appearing to answer, and nonjoinder of parties who are not inhabitants of, nor found within, the district as aforesaid, shall not constitute matter in abatement."

In the case of Barney v. Baltimore City, 6 Wall. 280, it was held that under this statute a plaintiff could prosecute his suit to judgment against any one of a number of joint obligors, in the district where he was found. See, also, Inbusch v. Farwell, 1 Black, 566–571. The demurrer as to the parties must be considered as setting up what should be termed "matters in abatement." Perhaps the better practice in a federal court would be to set up such matters by a plea in abatement. That it would have better presented the matter for consideration in this case is evident, as we find, from the evidence of John S. Noyes, that both Clark and Filmore are dead. When they died is not stated. The demurrer for want of proper parties was not interposed until the cause was transferred to the circuit court. Whatever might have been the condition of the case in the state court, the fact that Clark and Filmore were not joined as defendants could not have been taken advantage of in the circuit court. Without them, the cause proceeded rightly to judgment.

It is urged that, by the express conditions of the contract, the times and terms of sale of the said lands were to be determined by the plaintiffs in error. There is some dispute as to whether this part of the agreement referred to the sale of the lands, as well as to the sale of stumpage. But let the contention prevail in favor of the plaintiffs in error that it referred to both. Certainly, it was contemplated that the time and terms of the sale of the land were to be fixed by them. The contract cannot be so construed as to leave it to their option to say whether or not a sale should ever take place, or as to whether the time or terms of sale should ever be fixed. It was contemplated that at some time they should be fixed. Courts, unless forced to the conclusion by the terms of a contract, will never hold that one party thereto can elect never to perform it. A promise to pay a debt when convenient has been con-

strued to be a promise to pay within a reasonable time. Moak, Van Santv. Pl. 410; Terrill v. Auchauer, 14 Ohio St. 88. In the case of Nunez v. Dautel, 19 Wall. 560, it appears a promise was made to pay money as soon as the crop could be sold, or the money could be raised from any other source. The court said:

"No time having been specified within which the crop should be sold, or the money raised, otherwise, the law annexes as an incident that one or the other should be done within a reasonable time, and that the sum admitted to be due should be paid accordingly. Payment was not conditioned to the extent of depending wholly and finally upon the alternatives mentioned. The stipulation secured to the defendants a reasonable amount of time within which to procure, in one mode or the other, the means necessary to meet the liability. Upon the occurrence of either of the events named, or the lapse of such time, the debt became due. It could not have been the intention of the parties that if the crop was destroyed, or, from any other cause, could never be sold, and the defendants could not procure the money from any other source, the debt should never be paid. Such a result would be a mockery of justice."

Although it was left by the contract to the plaintiffs in error to fix a time for the sale of the land, the law steps in, and says that must have been a reasonable time, and the price must be a reasonable one. If said plaintiffs did not determine that the sale should take place within a reasonable time, for a reasonable price, then they committed a breach of their contract with said defendant.

Again, it is urged that this action should have been brought in a court of equity. As a survivor, the defendant in error had a plain, speedy, and adequate remedy at law; and the circuit court would have had no jurisdiction of the cause, sitting as a court of equity. The case of Agard v. Valencia, 39 Cal. 303, was a case for specific performance, and properly brought in a court of equity. The case of Grain v. Aldrich, 38 Cal. 514, was one where a part of an indebtedness had been assigned. The assignee sought to recover the amount due it by the assignment. Under the rule established in California, the assignee could not make the parties who owned the other part of the indebtedness parties defendant. That rule only applies, in that state, to actions in equity. So as to have a complete settlement of the indebtedness, the assignee had to resort to a court of equity. That is not a case like this, where the defendant in error was the sole plaintiff at the institution of the action.

It is maintained that the court should have left it to the jury to have determined whether the offer made by Evans was to bond or purchase the land. I am satisfied that the evidence shows that the last offer made by Evans was to purchase, and not bond, the land, and the court was right in not submitting that issue to the jury. Many questions were raised as to this offer of Evans. It is urged that it should have been in writing, and that it should have been such an offer as would be binding under the statute of frauds. I do not think there is any merit in these contentions. As I look upon this offer, it was only a means of ascertaining the value of the land at the time defendant in error requested plaintiffs in error to sell the same, and as fixing the compensation to which

defendant in error was entitled. If the offer was a valid one,— that is, made in good faith,—it had a tendency to fix the value of the land at that time. There was no dispute as to whether or not the land was of the market value of $25 per acre at that time. This was the main thing sought, but plaintiffs in error contented themselves in assailing the good faith of this offer. There was no question raised but a reasonable time for making the sale had elapsed when the offer was made. As there was no motion for a new trial in this cause, we cannot examine into the question as to whether the verdict was or was not supported by the evidence.

It may be that under the evidence in this case the question of reasonable time was, according to the rule established by the supreme court, one for the court; but plaintiffs in error do not complain that it was submitted to the jury. As we view the case, the jury probably decided the matter correctly, and hence the case ought not to be reversed on this account.

There are many assignments of error which were not presented in the briefs of counsel, and which we have not thought best to discuss. Taking the case as a whole, we think it was correctly decided, although, if the court had been called upon to dictate the pleadings, in the light of the evidence presented in the case, the issues presented by them might have been different. As some of the points which have occurred to us have not been presented by the arguments of counsel, we shall not review them. Perhaps they were cured by verdict in the cause. Lincoln v. Iron Co., 103 U. S. 412. It is ordered that judgment be, and the same hereby is, affirmed.

GILBERT, Circuit Judge (dissenting). I am unable to concur in that portion of the opinion which holds that the pleadings state facts upon which a cause of action may be predicated. The agreement sued upon in this case shows that the parties to this action were engaged in a joint venture, the object of which was to purchase timber lands with a view to realizing profits, either by the sale of the lands, or by the sale of the timber. The defendant in error and his associate were to contribute to this venture their services in purchasing the lands, and were to receive a certain fixed percentage of the profits. The other parties to the agreement were to furnish the purchase money, were to take the title to the lands, and were to receive the remainder of the profits. They reserved to themselves also the power to determine the time and terms of the sale, whether of lands or of timber, with the option to cut and use the timber for themselves, in which event they were to be charged the market value of the timber. In arriving at the profits the purchase money was to draw interest at 7 per cent., and the plaintiffs in error were to be allowed all sums paid for taxes on the lands. The contract was made in June, 1882. The lands were subsequently purchased thereunder. The complaint then proceeds to show that on August 6, 1883, an offer was made by a responsible person to purchase the lands at a price which, if accepted, would have yielded a net profit of $97,412.61, and on the basis of that profit the plaintiff

in this action demanded judgment. It is not alleged that any of the lands or timber have been sold, and there is no averment of the present value thereof; but it is assumed that because, in 1883, an opportunity was afforded to sell at a certain price, the right accrued to the defendant in error to sue for and recover his proportionate amount of the profits that would have resulted, had that offer been accepted. The parties to this contract did not agree that the lands should be sold to the highest bidder, or at the first offer that might be received. It was left to the discretion of the plaintiffs in error to sell at such times and terms as they might deem advisable. They could not abuse that discretion, however; and no doubt the contract imposed upon them the obligation to sell within a reasonable time, and at a reasonable price. But, clearly, they were under no obligation to accept the offer of August 6, 1883. They had the right to exercise their judgment concerning its acceptance or rejection. That power had been voluntarily conferred upon them, and the contract had been entered into with that understanding. It is within common knowledge that the value of such lands is fluctuating. It does not follow that because, in 1883, an offer was made, which, if accepted, would have insured a profit of $97,412.61, that profits to that amount have been earned. The property may have greatly decreased in value since that date. In declining that offer the plaintiffs in error may, it is true, have lost an excellent opportunity to sell the lands at a profit, and they may have failed to exercise ordinary prudence; but the relation they sustained to the defendant in error was not such that the fact of that offer, and its refusal, amounted to a breach of their contract or caused their liability to him to become fixed and determined in a definite sum recoverable in an action at law. This view of the contract relation between the parties does not deny to the defendant in error the power to protect his interests, or to sue for his proportion of the profits, if any there were. If, after the lapse of a reasonable time within which to dispose of the lands, they still remained unsold, he undoubtedly had his remedy. If the profits had in any manner been ascertained, as by an accounting, or by the agreement or admission of the parties, he could have brought an action at law to recover the ascertained amount; but if, as in this case, nothing had occurred to determine the profits, I hold that his only remedy was by a suit for an accounting. In such a suit, he must either prove an increase in the value of the lands, or such failure of contract duty upon the part of the other parties to the agreement that they would be held liable for profits which they might have earned, but did not. In such a suit, account would be taken of the amount of the purchase money expended, with the interest on the same, and the taxes paid since the purchase. In the case before the court, no mention has been made of the taxes.